In the Matter of WILLIAM JERRY, Appellant, v. BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF SYRACUSE et al., Respondents.

In the Matter of BOBBIE L. SODA, Appellant, v. KENNETH W. CHRISTNER, as Superintendent of the Eden Central School District No. 1, et al., Respondents.

Fourth Department, April 11, 1974.

*Bernard F. Ashe (Ira Paul Rubtchinsky* of counsel), for appellants.

*Hancock, Estabrook, Ryan, Shove & Hust (David W. Larrison* of counsel), for Board of Education of City School District of City of Syracuse and others, respondents.

*Penney, Maier & Mandel (Robert E. Maier* of counsel), for Kenneth W. Christner and another, respondents.

GOLDMAN, J. These appeals are from two judgments which dismissed appellants' petitions and directed the parties to proceed to hearings in accordance with section 3020-a of the New York State Education Law. Both appellants are tenured teachers in public school systems and were suspended from their teaching positions pending the hearing of charges against them.

Petitioner-appellant Jerry has been continuously employed as a physical education teacher in the Syracuse City School District since 1961. He received tenure status as of September 1, 1964. He taught physical education in both elementary and secondary schools which were governed by the respondent Board of Education in the Syracuse District. In December, 1972 and February, 1973 appellant Jerry was informed by the respondent by a letter from the Assistant Supervisor that numerous complaints had been received regarding appellant's use of physical restraint and punishment on children in the Nichols Elementary School. The letter of April 19, 1973 informed Jerry that the complaints were under investigation and directed him "not

to touch any student for any reason ". After completion of the investigation the respondent Superintendent of Schools pressed charges against appellant at an executive session of the respondent board on May 30, 1973. The board found that probable cause existed for five charges and served notice upon appellant of the charges on May 31, 1973. The " probable cause " notice charged that:

" 1. At various times during the 1971–72 school year while employed at the Cleveland School, you subjected certain pupils to unreasonable and excessive physical force and/or restraint, including, but not limited to, bodily lifting pupils off their feet by the neck, shoving pupils in such a manner as to cause them to fall to the ground, and the striking of pupils."

Jerry continued to teach after the filing of the charges. On June 7, 1973 an affidavit was made by a parent alleging that Jerry had abused her child by pulling her hair. It further stated that Jerry had used profanity in a telephone conversation with the parent. The Superintendent of Schools showed the affidavit to Jerry on June 7, 1973 and suspended him from his teaching position without pay pending the disposition of all the charges against him. On June 13, 1973 the Board of Education confirmed the suspension and found probable cause for three additional charges against appellant. All of the charges were consolidated by the New York State Commissioner of Education for one hearing and a hearing was commenced July 18, 1973 before respondent Dettor, hearing officer. At the hearing objection was made by Jerry to the insufficiency of the charges and of a bill of particulars which had been furnished upon the appellant's demand. Appellant also entered other objections to the testimony produced by the board. Before the hearing was completed, and in his brief, petitioner estimates that the total hearing will require three weeks to complete. Jerry commenced a proceeding pursuant to article 78 of the CPLR in which he sought judgment annulling on constitutional grounds the board's action in suspending him without pay and in prosecuting a tenure hearing proceeding. The petition sought Jerry's reinstatement with full back pay.

Petitioner-appellant Mrs. Soda is a tenured kindergarten teacher employed by the Board of Education of the Eden Central School District No. 1. She had worked for the board for about 11 years and prior to May, 1973 no formal charge was ever brought against her. Her petition alleges that during October, 1972 she was informed that she would be granted a paid leave of absence effective October 16, 1972 for a two-month period.

Petitioner had not requested the leave and she asserts that she took the leave because she felt that she had no choice but to accept it. The leave was extended January 26, 1973 which corresponded with the end of the first academic semester. During January, 1973 Mrs. Soda received two letters from the Superintendent's office informing her that the board requested a medical evaluation of her fitness to perform duties and that "as a condition of your reinstatement after the extended leave, that it [the board] must be sure beyond a reasonable doubt that you are free from any physical or mental illness which would impair your professional performance as a teacher". Mrs. Soda was further informed by letter not to report for duty until she received further authorization. This direction not to return to work was reaffirmed by a new Superintendent by letter of March 5, 1973. The petitioner received her normal salary until January, 1973 and she also continued to receive a periodic pay check from January to March, 1973, but during this period the board made systematic deductions from her accrued sick leave. This was done, Mrs. Soda asserts, without her knowledge or consent. In March, 1973, after Mrs. Soda's accrued sick leave was depleted, the board ceased to make further payments to her. On May 4, 1973 the board found " probable cause " for a charge of incompetency against Mrs. Soda and by a formal document notified her that she " has a mental disability within the meaning of Section 3012 (2) of the Education Law. Such disability is of a nature as to render her unable to cope with her responsibilities within the classroom, and by reason of which, both she and the children with whom she has daily contact would suffer as a result of her resumption of teaching responsibilities ". Attached to this notice was a copy of the rights of tenured employees under section 3020-a of the Education Law. On the same date, in a separate letter, the board informed Mrs. Soda that it " has voted to suspend you from the teaching staff of Eden Central School pending disposition of the charge against you. This suspension is to take effect immediately ".

Before any hearing was held Mrs. Soda, by petition verified May 31, 1973, commenced her article 78 proceeding whereby she sought judgment annulling the action of the board in imposing a leave of absence without pay and in prosecuting a tenure hearing. The petition also sought reinstatement with full back pay and the declaration that certain sections of the Education Law were unconstitutional.

These two appeals are considered in one opinion because there are common questions of law which are determinative of both of them. The principal issues asserted by both petitioners are that as tenured teachers they have "a liberty and property right which is protected by the due process guarantees of the United States Constitution" and that they have been denied "procedural and substantive due process with respect to the suspension imposed" upon them and that pending a final determination they are entitled to their full back pay.

In *Jerry*, Special Term held (75 Misc 2d 461, 464) that: "Article 78 is not available for interlocutory relief; it cannot be addressed to a determination that is not final or which can be reviewed by appeal to a court or by review of some other body or officer (CPLR 7801). Final determination will be made in this matter, not by the hearing panel, but by the respondent board (Education Law, § 3020-a, subd. 4). If the petitioner is aggrieved thereby he may appeal to the Commissioner of Education, or, then, by article 78 to the court (Education Law, § 3020-a, subd. 5). The latter is available to the petitioner if there is a constitutional question not resolvable by the Commissioner. This review is able to look to rulings on the evidence whether it is by the Commissioner (see *Matter of Gaby,* 11 Ed. Dept. Rep. 184) or by the court (see *Marcato* v. *Board of Educ. of Cent. School Dist. No. 1,* 40 A D 2d 978). (See, also, *Matter of Kolanda* v. *Brunner,* 27 A D 2d 886, denying an interlocutory objection to a bill of particulars.)"

We agree that an article 78 proceeding is not appropriate for interlocutory relief. The entire proceeding is subject to review after the hearing has been completed. Any error may be corrected at that time by appropriate proceedings (see *Matter of Greater New York Corp. of Seventh Day Adventists* v. *Commission on Human Rights of City of N. Y.,* 27 N Y 2d 898; *Matter of Walston & Co.* v. *New York City Comm. on Human Rights,* 41 A D 2d 238; *Matter of Sardino* v. *Finch,* 35 A D 2d 686).

Both petitions raise the question of whether an article 78 proceeding may be used to test constitutionality. "Article 78 proceedings continue to be inappropriate vehicles to test the constitutionality of legislative enactments and respondent's remedy is an action for a declaratory judgment. Although it is true that CPLR 103 (subd. [c]) gives the courts the power to treat an article 78 proceeding as an action for a declaratory judgment, this power is conditioned on jurisdiction over the parties" (*Matter of Overhill Bldg. Co.* v. *Delany,* 28 N Y 2d 449,

458). Section 71 of the Executive Law and CPLR 1012 (subd. [b]) require that when the constitutionality of a State statute is in question, the Attorney-General shall be notified and he shall be permitted to intervene in support of its constitutionality. The failure to notify the Attorney-General precludes this court from determining the constitutionality of the relevant sections of the Education Law. Special Term in each case properly determined that at the stage of the proceedings before it article 78 was not the proper vehicle for the remedy petitioners sought.

The second question which is common to both proceedings is whether the board had the right to suspend without pay prior to a hearing. Subdivision 2 of section 3020-a of the Education Law provides that a teacher "may be suspended pending a hearing on the charges and the final determination thereof". Sections 2554, 2566 and 3020-a of the Education Law are silent on the question of compensation but none of these sections specifically grants the power to deny pay during suspension. It is not unreasonable to suggest that "Had it been intended to confer authority to withhold pay pending charges we think it would have been so expressed in the rule or the charter [statutes]" (*Matter of Shinkle v. Murray*, 221 App. Div. 301, 303). Special Term in the *Jerry* proceeding correctly asserted that a tenured teacher has a constitutionally protected interest which includes his right to compensation and of which he cannot be deprived without due process of a hearing, citing *Slochower v. Board of Educ.* (350 U. S. 551). However, as to the granting of pay, Special Term stated (75 Misc 2d 461, 463) "that if a school board suspends a teacher without pay and the teacher is found innocent of the charges, he is entitled to reimbursement in full for any period of suspension (Education Law, § 3020-a, subd. 4)". In denying back pay until the final determination, the court felt that the school board must protect the governmental interest of not making gifts of public money (see N. Y. Const., art. VII, § 8). Believing this principle to be overriding, the court held that the board could suspend a teacher without pay on presentment of charges prior to a hearing. As stated in *Slochower v. Board of Educ.* (*supra*), a tenured teacher has a constitutionally protected property interest. No person can be deprived of a right in a manner which contravenes the due process provisions of the Fourteenth Amendment (*Schware v. Board of Bar Examiners*, 353 U. S. 232; *Bell v. Burson*, 402 U. S. 535; *Board of Regents v. Roth*, 408 U. S. 564; *Perry v. Sindermann*, 408 U. S. 593).

Appellants contend that they have never had a meaningful opportunity to defend the charges against them and that the deprivation of their pay without such a hearing violates the due process clause of the Fourteenth Amendment. There are no specific guidelines for the type of hearing, but certainly a fair hearing should be afforded them. "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event" (*Boddie* v. *Connecticut,* 401 U. S. 371, 378-379). To deny them compensation until a final determination after a meaningful hearing, except in cases of unusual circumstances which are not present in the instant cases, would not fulfill the promise of the due process clause (*Mullane* v. *Central Hanover Trust Co.,* 339 U. S. 306, 313).

The nature of the charges against petitioners (physical restraint and punishment in Jerry and mental disability in Soda) justifies the suspension of them prior to hearings. "The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen * * * and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees" (*Pickering* v. *Board of Educ.,* 391 U. S. 563, 568). Applying this rule, the "balance" favors the suspension of both petitioners. In Jerry's case he was not suspended upon the first complaint and the board demonstrated its fairness by giving him a second chance. The board in Mrs. Soda's case did not suspend her until she had been examined by the school physician. Respondent had no opportunity to present its evidence of Mrs. Soda's mental disability, for it was precluded from doing so by commencement of the article 78 proceeding.

While section 3020-a of the Education Law provides a format by which petitioners can obtain the relief they seek, including restoration of all their rights, the hardship of deprivation of pay must be borne by them during the period of suspension. Balancing the interests of the parties, there does not appear an overriding State interest which would justify withholding pay from the date of suspension. Although dealing with the depriva-

tion of property in a different context (seizure of chattels prior to opportunity to be heard), the Supreme Court in *Fuentes* v. *Shevin* (407 U. S. 67, 81) recognized the constitutional dimension of property rights in its statement that " the prohibition against deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference. See *Lynch* v. *Household Finance Corp.,* 405 U. S. 538, 552." (See, also, *Armstrong* v. *Manzo,* 380 U. S. 545, 552.) The logic expressed by Special Term that appellants would be able to recoup their back pay if found innocent does not undo the wrong appellants would suffer during the period of suspension without pay. As a matter of equity, the board is in a much better position to stand any financial loss which might be incurred by requiring the payment of compensation prior to final determination.

We find no merit in respondent's claim in Soda that the proceeding was not timely brought. Special Term properly determined that by reason of the continuing nature of the proceedings, petitioner had " proceeded in a timely manner as prescribed by statute " (CPLR 217).

Respondent's contention that petitioner Soda was required to exhaust her administrative remedies before recourse may be had in the courts is also without merit (see *Matter of Balaban* v. *Rubin,* 14 N Y 2d 193; *Matter of Strippoli* v. *Bickal,* 21 A D 2d 365). We further disagree with the claim that the Commissioner of Education is a necessary party to the proceedings. The Commissioner played no substantial role in the injury to petitioners and in any event he will not be adversely affected by a determination in these matters.

Since the argument of these appeals, a three-Judge United States District Court sitting in the Western District of New York heard the case of *Kinsella* v. *Board of Educ. of Cent. School Dist. No. 7.* That case involved a tenured school teacher who had been employed by the defendant Board of Education as a physical education and health education instructor for a period of 14 years. Charges were filed against him pursuant to the provisions of section 3020-a of the Education Law of the State of New York for allegedly administering excessive corporal punishment to the students. The *Kinsella* case is an almost absolute parallel to the *Jerry* case herein. By decision dated February 19, 1974, the United States District Court made the following determination: " For the foregoing reasons we declare that § 3020-a of the Education Law of the State of New

York, *absent administrative regulations requiring decision to be based upon evidence elicited before the hearing panel and the decision of the Board to set forth the reasons and factual basis therefor, is unconstitutional,* and the defendants are enjoined from its enforcement until such time as appropriate administrative or legislative action is taken to remedy the defects in the procedures here involved." (Emphasis added.)

Immediately upon the release of the decision in the *Kinsella* case, the Commissioner of Education of the State of New York amended the regulations in the following manner:

" AMENDMENT TO REGULATIONS OF THE COMMISSIONER OF EDUCATION

" Pursuant to Section 3020-a of the Education Law

" 1. Subdivision (h) of section 82.10 of the Regulations of the Commissioner of Education is amended, effective February 28, 1974, as follows:

"(h) The findings of the panel on each charge, and the recommendations of the panel as to disciplinary action, if any, against the employee shall be submitted to the hearing officer, together with the panel members' copies of the transcript, no later than the adjourned date of the hearing. Upon receipt of such findings and recommendations, the hearing officer shall declare the hearing concluded, and shall forward the findings and recommendations, together with the three copies of the transcript, to the commissioner. *The commissioner shall forward a report of the hearing, including the findings and recommendations of the hearing panel and their recommendations as to the penalty if one is warranted, together with a copy of the transcript of the proceedings before the hearing panel, to the employee and to the clerk of the employing board.*

" 2. The Regulations of the Commissioner of Education are amended, effective February 28, 1974, by the addition of a new section 82.11 to read as follows:

" Section 82.11 Decision of the board. The decision of the board of education shall be based solely upon the record in the proceedings before the hearing panel, and shall set forth the reasons and the factual basis for the determination." [8 NYCRR 82.10 (h) and 82.11; italics supplied.]

Although this court is precluded from considering the question of constitutionality for the reasons stated above, it appears to us that compliance with the amendment to the regulations of the Commissioner of Education removes the issue of constitutionality. The amended administrative regulation affords pro-

cedural due process to hearings conducted pursuant to the provisions of the administrative regulation.

The respondent Boards of Education in both cases were justified by the probable cause that existed to suspend both petitioners. Pending the hearings and the decisions of the Boards of Education, the petitioners shall receive such back pay as is due them and their future regular pay. If the decisions of the Boards of Education shall be adverse to petitioners and shall result in their suspension for a given period or dismissal, then the salaries of the petitioners shall cease upon the date of the decision of the respective Boards of Education. We note in passing that petitioners bear some responsibility for the delay in the holding of hearings in these matters. Action on petitioners' parts in the future which substantially delays the ultimate determination of these matters might well justify applications by respondent boards for permission to cease payment of compensation from the date of the occurrence of such delays.

Each judgment appealed from directed that the matter proceed to hearing forthwith. We are in complete agreement with this instruction. We direct that hearings shall be commenced at the earliest opportunity in both cases and that said hearings shall be held in conformity with and pursuant to the amendment to the regulations quoted above. Both matters are remitted to the respective Boards of Education for the holding of hearings pursuant to this opinion.

In first above-entitled proceeding, MARSH, P. J. WITMER, MAHONEY and DEL VECCHIO, JJ., concur.

In second above-entitled proceeding, MARSH, P. J., WITMER, SIMONS and MAHONEY, JJ., concur.

Judgments unanimously modified in accordance with opinion by GOLDMAN, J., and as modified affirmed, without costs.