Jones, J.
In the context of these two cases we hold that section 3020-a of the Education Law, as presently drafted, does not authorize suspension of a tenured teacher without pay.
In Jerry, after investigation and the filing of initial charges and confronted with continuing parent complaint, the Board of Education, finding probable cause for both the initial and additional charges, suspended a physical education teacher without pay in June, 1973. The charges involved allegations that the teacher had subjected pupils to “ unreasonable and excessive physical force ”, had used “ inappropriate and profane language in the presence of pupils ”, and in both respects had been guilty of insubordination since specific orders had previously been issued to him to desist from such conduct. The charges were filed with the Commissioner of Education for a hearing under section 3020-a. The hearing was begun in July, 1973 and then adjourned by agreement to September of that year.
On August 31,1973 the teacher instituted the present proceeding to declare section 3020-a unconstitutional as applied to him, to rescind his suspension without pay, to be reinstated with back pay, and for associated procedural and other relief. Supreme Court’s dismissal of the teacher’s petition was modified at the Appellate Division by directions that the teacher *540 be paid back and continuing pay and that the matter be remitted for a hearing on the charges as directed.
In Goldin, the Board of Education instituted disciplinary proceedings against a tenured, guidance counselor based on two charges. The first and principal charge was: ‘ ‘ That on or about the night of August 8 and the early morning of August 9, 1973 * * * [the teacher] spent the night at a residence * * * in said school district, and slept with an 18-year old female, a member of the 1973 graduating class of said school district, and a student for whom * * * [the teacher] was a guidance counsellor, * * * [the teacher] not being married to said student, and the parents of said student not being then in residence.” The second charge was that the teacher had falsely denied the allegations of the first charge. Pending the resolution of these charges the teacher was suspended without pay pursuant to section 3020-a.
The teacher thereupon instituted the present action for a declaration of his rights and appropriate associated injunctive relief, and obtained a supporting stay of the disciplinary proceedings pending the resolution of the action. Supreme Court permanently enjoined prosecution with respect to the first charge, but upheld the teacher’s suspension without pay pending the disposition of the second charge. The Appellate Division modified by striking the injunction with respect to the first charge and by limiting withholding of the teacher’s pay to a period of 30 days from the date suspension was imposed.
In Goldin the teacher argues that to permit the first charge to be used as the basis for disciplinary proceedings against him would be to violate his constitutional right to privacy and challenges the withholding of his pay on both statutory and constitutional grounds; the board opposes these contentions and asserts that. it may suspend the teacher without pay pending the disposition of the disciplinary proceedings under section 3020-a, In Jerry, also on cross appeals, the teacher mounts a broad assault on section 3020-a,[1] including a specific challenge *541 to his suspension without pay; the board urges that it has authority to suspend the teacher without pay pending the outcome of the section 3020-a proceedings, and in any event that the teacher should be required to deduct earnings from outside employment in mitigation of damages.
We proceed first to the resolution of the issue common to both cases — when a tenured teacher has been suspended may the Board of Education withhold his salary pending the determination of disciplinary proceedings under section 3020-a? All of the members of the court are of the view that suspension of a tenured, teacher without pay pending the final determination of section 3020-a disciplinary proceedings, provided such determination is not unreasonably delayed, would involve no infringement of the teacher’s constitutional rights (Sanford v. Rockefeller, 35 N Y 2d 547; Arnett v. Kennedy, 416 U. S. 134; cf. Mitchell v. Grant Co., 416 U. S. 600; Pordum v. Board of Regents of State of N. Y., 491 F. 2d 1281, cert. den. 419 U. S. 843). A majority of the court, however, holds that section 3020-a as now worded does not authorize withholding of pay during a period of suspension.
The power of suspension is essential to the sound administration of the public school system — for the protection of the pupils in certain circumstances, for the protection of the teacher in other circumstances, and in many situations fob the promotion of the best interests of the public. This authority is expressly granted to the Board of Education under subdivision 2 of section 3020-a — “ The employee may be suspended pending a hearing on the charges and the final determination thereof.”
It does not follow, however, that to accomplish the legitimate objectives of suspension there must be an accompanying withholding of pay. Compensation is a matter, of such substantive right on the part of the teacher that we conclude that it cannot *542 be taken away from him except pursuant to explicit statutory authorization. We do not find such predetermination authorization in section 3020-a as now worded.
We are not unaware that a sufficient predicate for withholding has been found by some in the indirect reference to suspension without pay contained in subdivision 4 that “ [i]f the employee is acquitted he shall be restored to his position with full pay for any. period of suspension ” (emphasis added) (see the dissent herein; Goldin v. Board of Educ., 45 A D 2d 870; cf. Matter of Mitchell v. Board of Educ., 252 App. Div. 873). To the assertion that one should infer from this phrase an intention on the part of the Legislature to confer authority to withhold, we rejoin that had there been such an intention the easy and normal manner of its expression would have been to include an explicit, appropriate provision therefor in subdivision 2. We find the absence of an explicit provision more significant than the inclusion of the oblique reference, particularly in the face of the conceded fact that the existence of such authority is not necessary to the achievement' of the primary objective for which we conceive the power of suspension was granted.[2]
The dissenters in this instance would in reality call for judicial amendment of the statute rather than its judicial construction. This conclusion appears evident from the fact that all who would find authority to withhold pay in the statute as now worded would also require the imposition of some limitation of time. They differ widely, however, as to what time limit should: be supplied. The dissenters in our court would conclude that the statute imposes no more specific a time limit than that the section 3020-a proceeding be completed without unreasonable delay. The majority in the Appellate Division reads the statute to impose a 30-day time limit. The Attorney-General invites us to find a 90-day limit. The statute itself, of course, by neither direct provision nor oblique intimation suggests any time limitation at all.
*543 There being no constitutional impediment, in the view of all of us, to a statutory grant of explicit authority to withhold pay pending final determination of section 3020-a proceedings promptly conducted, we leave it to legislative determination, if the Legislature be so minded, to grant specifically defined authority to withhold compensation during suspension.[3]
Accordingly we hold that the Board of Education in neither Jerry nor Goldin had authority to withhold compensation during the period of suspension of the teacher involved.
As we recently held in Matter of Lezette v. Board of Educ., Hudson City School Dist. (35 N Y 2d 272) in circumstances similar to those presented here, the boards in both Jerry and Goldin are entitled to credit against the teacher’s entitlement to back salary all earnings which the teachers may have had from other employment during their periods of suspension.
There remains for brief consideration in Goldin the teacher’s contention that constitutional protection of his right of privacy precludes use of the first charge as a predicate for disciplinary proceedings against him (cf. Griswold v. Connecticut, 381 U. S. 479). We reject his contention in the circumstances of this case.[4]
We cannot accept the proposition that the Constitution confers an absolute right of privacy. We conclude that such right must give way in these circumstances to a recognition of the legitimate interests of the school. In our view what might otherwise be considered private -conduct beyond the scope of licit concern of school officials ceases to be such in at least either of two circumstances — if the conduct directly affects the performance of the professional responsibilities of the teacher, or *544 if; without contribution on the part of school officials, the conduct has become the subject of such public notoriety as significantly and reasonably to impair the capability of the particular teacher to discharge the responsibilities of his position.[5]
Applying the first branch of such standard to the case before us we cannot-say, at this stage, that to permit these disciplinary proceedings to go forward with reference to the first charge against this teacher would necessarily be to trespass on his right to privacy. It is true that the charge as phrased does not explicitly link the alleged conduct with the school-year performance of the teacher’s responsibilities as guidance counselor, as would have been the case had the other participant been a pupil of his at the time of the episode. Nonetheless, the period of time since the former student was graduated (less than two summer months) was so short that, without clear evidence of no prior Association, the availability of practical, realistic inferences is such as to make judicial foreclosure of further inquiry inappropriate, particularly at the threshold, prehearing state of the disciplinary proceedings.[6] With the majority at the Appellate Division, we refrain at this time from the expression of any opinion as to whether the proof at the hearing will establish such prior relationship or public notoriety as would warrant discipline of the teacher.
Finally, we find no -sufficient warrant for the contention of the teacher in Jerry that it was error on the part of the Appellate Division to decline to confront the full spectrum of his constitutional assault on section 3020-a. That court properly noted that an article 78 proceeding is not the proper vehicle for such a review. Whether then to convert the proceeding into an action *545 for a declaratory judgment under CPLR 103 (subd. [c]) on the addition at the appellate level of the Attorney-General as a necessary party lay within the sound discretion of the court. We cannot say, in the circumstances of this, case, that the refusal to do so constituted an abuse of discretion as a matter of law. We ourselves now decline the teacher’s similar invitation to us to convert the proceeding in our court, noting that the arguments which the teacher would advance are not foreclosed since they may later be raised on any appeal to the commissioner or on any judicial review of the determination to be made in the section 3020-a proceeding (§ 3020-a, subd. 5).
Accordingly, thé order of the Appellate Division in Jerry should be modified to authorize the offset against back pay to which the teacher is entitled, of compensation, if any, earned by him during the period his compensation from the school district was withheld, and, as so modified, affirmed; and the order of the Appellate Division in Goldin should be modified to direct payment to the teacher of back pay which has been withheld from him, subject again to a similar offset, and, as so modified, affirmed.
Chief Judge Bbeitel, Jasen and Stevens, JJ. (dissenting). We dissent and vote to modify the orders appealed from to the extent of permitting payless suspension of a tenured teacher for such period as is reasonably necessary for completion of a proceeding pursuant to section 3020-a of the Education Law.
Subdivision 2 of section 3020-a provides for suspension of a tenured teacher pending a hearing on charges. Subdivision 4 provides that if acquitted, the teacher shall be restored to his position with full back pay for any period of suspension.
. Each of these provisions lends meaning to the other, and read together, as they must be (see McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 98), the conclusion is inescapable that the statute sanctions a discretionary prehearing suspension without pay. Subdivision 7 of section 2573 of the Education Law contains similar language and has consistently been interpreted by the courts and those administering it as permitting a payless prehearing suspension of a tenured teacher. (See, e.g., Matter of Sife v. Board of Educ. of City of N. Y., 65 Misc 2d 383, affd. 39 A D 2d 841; Matter of Mitchell v. Board of Educ. of City of *546 New Rochelle, 252 App. Div. 873; Matter of Wolf v. Board of Educ. of City of N. Y., 184 Misc. 890; Matter of Lederman, 72 N. Y. St. Dept. Rep. 119.)
To be sure, basic fairness requires that a payless suspension not be unlimited. And insofar as the statute is silent in this regard, it is deficient. But this deficiency the courts are competent to remedy by application of the traditional rule of reasonableness. Here, in the absence of legislative expression of intent, an appropriate limitation would appear to be the time reasonably required to complete the hearing and associated procedures under the statute. This would exclude, of course, any unjustified delay attributable to the school board. But by the same token, delay attributable to the suspended teacher should not redound to his benefit in determining reasonableness in a particular case.
Section 3020-a is a long self-contained statute providing for charges, hearings, suspension, procedures after hearing, and appeal, in the discipline and removal of educational employees. Subdivision 2, as noted, provides for the suspension. True, it says nothing about whether the suspension is payless or with pay. However, subdivision 4 states that “ [i]f the employee is acquitted he shall be restored to his position with full pay for any period of suspension ”. The provision is not meaningless. Most important, it, by necessary implication, imports the notion that the suspension has or may have been payless. It would certainly be an extraordinary provision if all it meant was that if an acquitted employee is restored to his position he is to receive full pay. If it did, it would suggest that he had not received full pay before, or that he might, but for the provision, be restored to his position with a reduction in pay. Moreover, that would be illegal, in all but the rarest instances, since compensation allocated to a position in the civil service is determined by law.
Of course, the language analysis above and in the majority opinion does not touch the crux of what started this kind of litigation. The litigation over payless suspensions was spawned by a variety of Federal cases which seemed to bar penalties, forfeitures and the like in advance of a fair hearing. All that has gone by the board by the rulings in later cases, and even *547 the majority accepts the premise that there is legislative power to provide for payless suspensions.
As for the bringing to a head either a paid or payless suspension within a reasonable time, no legislative arrogation by the courts is involved. The fixing of particular time limits would be legislative in an offensive way. The rule requiring private and public acts, and agreements to be subject to a reasonable time implication by law is a rule that goes back at least hundreds of years, if not into the yearbooks. Without such legal implication a veritable multitude of public and private transactions and a multitude of statutes would be rendered either void or futile.
To top it off, this court in the Lezette case (Matter of Lezette v. Board of Educ., Hudson City School Dist., 35 N Y 2d 272) and now in this case reaches out to require an offset of outside earnings to its full pay requirement, without the benefit of statute, agreement, or regulation. If that be legitimate judicial gap-filling of interstices of statute law, providing a reasonable time in which payless suspensions (or even paid suspensions) must be terminated by disposition of charges is not only tolerable, but traditional.
Most important, as previously noted, payless suspensions under analogous provisions of the Education Law have long been accepted in administrative practice and in the courts.
Judges Gabrielli, Waohtlbr and Rabin concur with Judge Jones; Chief Judge Breitel and Judges Jasen and Stevens dissent and vote to modify in accordance with their separate opinion.
In each case: Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed,

. In addition to urging that the Constitution mandates a prior hearing, the teacher in Jerry charges other constitutional infirmities in section 3020-a procedures: lack of opportunity to the teacher to appear before the Board of Education as the ultimate decision-maker; impermissible combination of prose *541 cutional and adjudicatory roles in the Board of Education; the absence of requirements that the board be bound by the recommendations of the hearing panel or even that the decision of the board be based on the record made before the hearing panel; the absence of requirement that the board make a record of its determination; and the insufficiency of the amendments to the rales and regulations of the Commissioner of Education to remedy the constitutional deficiencies in the statute. (Cf. Kinsella v. Board of Educ., 378 F. Supp. 54.)

. To the extent that it may be suggested that on occasion our court has read additional terms into a statute, it has done so to supply a constitutional requirement (e.g., Matter of Buttonow, 23 N Y 2d 385, 393) and then to confer a right, usually procedural. In the present instance we all agree that the issues raised do riot rise to constitutional dimension, and in any event the invitation here is to constrict the rights of individuals rather than to enlarge them.

. The contention advanced by respondents Boards of Education that not to withhold compensation during periods of suspension would constitute a gift of public funds in violation of section 8 of article YII of our State Constitution goes too far. Neither respondents nor anyone else contends that the statute is to be read as mandating the withholding of compensation in every ease of suspension, yet that would appear to be the consequence of acceptance of this constitutional contention. At most it is argued that the statute confers discretionary authority to, withhold pay (Goldin v. Board of Educ., 45 A D 2d 870, 871), possibly because considerations of the public good support permissive rather than automatic withholding-, e.g., the chilling effect mandatory withholding would inevitably have on the board’s exercise of the power of suspension.

. No one seriously suggests that “ a teacher’s classroom conduct be the sole basis for determining his fitness ” (Beilan v. Board of Educ., 357 U. S. 399, 406).

. (See, generally, Norton v. Macy, 417 F. 2d 1161; Morrison v. State Bd. of Educ., 1 Cal. 3d 214.) For discussion of resolutions of the conflict between a public employee’s right to privacy and his employer’s right to investigate conduct evincing “ immortality ” or “ unfitness ” see, generally, Comment, Unfitness to Teach: Credential Revocation and Dismissal' for Sexual Conduct, 61 Cal. L. Rev. 1442; Note, Application of the Constitutional Privacy Right to Exclusions and Dismissals from Public Employment, 1973, Duke L. J. 1037.

. This is especially so when the statute mandates that the Board of Education must determine whether probable cause exists within five days of receipt of the charge from the clerk (§ 3020-a, subd. 2). Such restriction of time affords limited opportunity at best for proper investigation into the background of the charge as filed.