OPINION OF THE COURT
Parker J. Stone, J.
In this CPLR article 78 proceeding, petitioner, a tenured school teacher, seeks an order nullifying a determination made without a hearing by the Board of Education of the City School District of the City of Oswego that petitioner abandoned her teaching position with the respondent school district, and that petitioner’s teaching position was vacant. Pe *43 titioner also seeks an order that she be reinstated to her teaching position with all attendant benefits.
Respondents answered the petition by factually alleging that petitioner abandoned her position. The petitioner has heretofore moved to dismiss this affirmative defense of abandonment and this court ruled by decision dated June 6, 1978 that the allegations contained in the answer, if not explained or disproved, made out a case of abandonment or resignation sufficient to terminate petitioner’s services without a hearing. The petitioner, with the permission of the court, served a reply to the answer which contains the minutes of a workers’ compensation hearing held on the issue of petitioner’s causally related disability and voluntary removal from the labor market. The hearing minutes contain the sworn testimony of the petitioner, and a review of petitioner’s sworn testimony reveals the following:
Petitioner, during the course of her employment, sustained a compensable back injury and as the result of this injury, she was absent from her employment on various occasions during the years 1975 and 1976.
In early 1977, petitioner applied for admission to Florida State University Law School at a time when she felt that she no longer had problems with her back and was no longer disabled. She had what she described as a "bad feeling” about remaining in the school district as a teacher, and she was also uncertain as to how long she would be able to teach by reason of her prior back difficulty.
Upon being accepted by the law school in April, 1977, petitioner requested a leave of absence without pay for the 1977-1978 school year so that she could resume graduate studies. Her request was denied by the board of education in June, 1977 and upon her leave of absence being disapproved, she applied to two insurance companies for disability insurance but found that she could not pass the required physical. The purpose of her requested leave of absence was to allow her to maintain the insurance coverage that she had with the school district.
During the month of July, 1977, she experienced back problems which required bed rest. On September 7, 1977, at the commencement of the school year, petitioner advised the principal of her school that she was having back trouble and that she still wanted a leave of absence without pay and that she intended to consult a neurosurgeon in reference to her *44 complaints. On September 12, 1977, she consulted a neurosurgeon who advised her against prolonged standing. Petitioner testified that her teaching duties as a ninth grade science teacher required her to move about and to stand for long periods of time. She was advised by this physician that her back discomfort was either the result of scar tissue from a previous operation or that she had another disc injury. A myelogram was recommended.
She continued her teaching duties from September 13, 1977 to September 19, 1977 and during the course of this week, she advised her principal that she was attempting to have a myelogram scheduled and that she had been advised not to stand for any prolonged period of time.
On September 19, 1977, petitioner lost her temper with a student; she was in pain. That evening she visited her attending physician who advised her not to work until the results of the scheduled myelogram were known. The myelogram had been scheduled for September 23, 1977; petitioner’s physician was having difficulty obtaining insurance company authorization for the myelogram and the myelogram was rescheduled for October 21, 1977 and finally accomplished on November 18, 1977. Petitioner advised her principal that she would not return to work until the myelogram was completed.
On September 23, 1977, petitioner left for Florida State University Law School and enrolled as a full-time student on September 26, 1977. She did not advise the school district that she was entering law school.
On November 8, 1977, she was contacted by her district superintendent who advised her to return to work. The petitioner told him that she could not teach and on the same date, she obtained a statement from a physician in Florida which recommended rest and that the petitioner not stand for prolonged periods of time. This physician’s statement was sent to the school district.
Petitioner thereafter received a letter from her district superintendent which related the substance of the telephone conversation which had taken place between petitioner and the superintendent, and on November 15, 1977, in her reply to this letter, she took exception to the superintendent’s statement that her job had been vacated and stated in this letter that she was having serious medical problems and would make no commitment on her return to work until the results of her medical tests were known. On November 18, 1977, the *45 myelogram was performed and her attending physician thereafter advised her to stay off her feet as much as possible.
On November 23, 1977, petitioner advised her principal of the results of the myelogram; that she did not know when she could return to her teaching duties, and she requested her physician to send a report to the district. The petitioner thereafter returned to Florida and resumed her studies.
On December 6, 1977, the board of education, acting in an executive session, determined by resolution that the petitioner was absent from work as a teacher in the district since September 20, 1977 without leave of the school district, and that she was a full-time duly enrolled student in a two- and one-half-year law school at a university located in Tallahassee, Florida, without the leave of the school district. Further, that she had been attending law courses since September 26, 1977 and had failed and refused to resume her duties as a teacher despite being commanded to do so by the district superintendent. The board concluded that the petitioner had abandoned her teaching position as of September 26, 1977 and determined that the position of teacher previously held by petitioner was vacant as of September 26, 1977. On December 11, 1977, petitioner received notification that her position was deemed abandoned by the board of education.
Section 3020-a of the Education Law which pertains to the discharge of a tenured teacher, specifically requires a hearing in all cases unless waived. An abandonment will eliminate the necessity for a hearing; however, the burden of proving abandonment is upon the school district and must be established by clear and convincing evidence that the petitioner, by a voluntary and deliberate act, intended to relinquish her teaching position and forfeit her tenure rights (see Matter of Boyd v Collins, 11 NY2d 228; People ex rel. Patterson v Board of Educ., 295 NY 313; Matter of Johnson, 3 Ed Dept Rep 186; Matter of Schiliro, 13 Ed Dept Rep 163; Matter of Widrick, 16 Ed Dept Rep 248).
When the school district proceeded without a formal hearing as required by section 3020-a of the Education Law, the school district was proceeding at its own risk in its interpretation of not only that evidence which was clearly before it, but also in respect to evidence the petitioner could have produced at a hearing had one been held. Consequently, whether the proof upon which the school district acted is clear and convincing must be considered in light of the sworn testimony *46 now offered by the petitioner who did not have the opportunity to present such evidence at a hearing. Petitioner’s sworn testimony presented upon this proceeding provides a reasonable explanation for her departure from the school system, i.e., her physical inability to perform the duties of a teacher, and this court cannot state as a matter of law that petitioner, by clear and convincing evidence, voluntarily and deliberately intended to relinquish her teaching position. The respondent school district should have afforded petitioner an opportunity to be heard.
The resolution of the Board of Education of the respondent City School District of the City of Oswego terminating the employment of petitioner is annulled. Petitioner is reinstated as an employee of the respondent and entitled to whatever benefits petitioner would have been legally entitled to in the absence of the subject resolution of the board of education.
The determination of this court does not in any way prejudice the respondents from proceeding against petitioner in accordance with section 3020-a of the Education Law.